Good morning. May it please the court, Conrad Gregory Badar here for the petitioner Kejin Chen. This matter is an asylum case based on the statutorily protected ground of religion. Our position is that this court should remand the matter for two reasons. One, Guo v. Sessions and two, the clear error in the board's decision. Right away, I want to address the first reason personally because the holding in Guo Sessions, in our opinion, that's the ballgame for Mr. Chen. So naturally, we need to dive into the harm. Now, although the issue of whether or not Mr. Chen's harm rose to the level of past persecution was not addressed by the IJ, it wasn't addressed by the BIA, we submit that Mr. Chen's account of past persecution is substantially similar to the petitioner in Guo. The petitioner in Guo was arrested, he was slapped twice, he was struck eight to nine times with a baton and detained for two days. Additionally, this petitioner in Guo was only released upon the payment of a bond and a letter of guarantee prohibiting his house church attendance and requiring weekly check-ins at his local police station. For comparison, Mr. Chen provided uncontroverted testimony that he was arrested, slapped, struck twice in the face and the head with a baton, he was forcibly kicked, detained for six days and suffered the same deprivation of religious liberty as the petitioner in Guo. Okay, Ken, so excuse me, but I think you, my need to address, I think the hurdle here is, I believe that the IJ found your client not credible. The BIA didn't address whether or not your client was credible and just went to the issue of corroboration and said he didn't have sufficient corroboration to prove his claim. And I guess the key question I have was given the IJ's adverse credibility finding and the BIA's link to the issue of corroboration, was your client ever given notice that he was required to corroborate anything and given the opportunity to do so? No, and I had the same issue with, that Cora's mentioning, with the board's lead. It did conclude that they reviewed the IJ's finding of fact for the case. Now, for us, again, the board said that Mr. Chen failed to provide sufficient corroboration. But they make a striking claim, and this is what I believe the clearly erroneous portion of the decision, is that it claims that the evidence of the church attendance could have been reasonably obtained. Now, it's curious that they say that they reviewed the findings of fact because there are no facts, nothing in the record that could assist the board to form the conclusion that's about the reasonableness of Chen's church attendance in Kentucky came up only twice during the merits. The first time it came up during direct examination, it was one question from his counsel. He was asked to identify the name of the church. He did. It came up a second time in cross. Again, only one question in which the government attorney asks him whether or not he has the church record. And then his answer was simply no. Now, at no time following these questions, nor at any time during the merits, did the IJ engage in a colloquy with Mr. Chen to discuss whether or not such a letter was reasonably obtainable. So counsel, let me interrupt you. So we have two different grounds, it seems to me, in the BIA's decision. One is the one that you're discussing now. But what about the other ground? It seems the other ground, the BIA's basis doesn't say that there's missing cooperative evidence. What the BIA said, if I think I'm quoting it correctly, that some of Mr. Chen's cooperative evidence conflicts with his testimony and other cooperative evidence. So that was their other ground. On that, I guess what I'm curious is, as Judge Wardlott said, there's the credibility issue, right, that the IJ went off on, but the BIA did not. But is a BIA allowed to say, we've looked at all the evidence, and putting aside credibility, your evidence doesn't line up, and so it's not persuasive. Can the BIA do that or not? Well, they can do it, but it wouldn't be based on substantial evidence. They didn't do that, so... But to be clear, do you mean it wouldn't be based on substantial evidence in this case, or do you mean they could never do that in any case? I don't understand which one you mean. I think that they should not do that in those cases, especially for asylum cases, because these are important matters, and they need to do better than that. Let me ask you about that. So let's say somebody provides testimony, right, and the applicant or the petitioner provides testimony, but then they do voluntarily, because this happens, I think, a lot, they voluntarily provide various documents. They don't necessarily wait until the IJ asks them to cooperate, right? They'll provide, like Mr. Chin did in this case. When they do that, if those documents that they provide don't line up with the testimony or with the other documents, if there's inconsistencies, what is the BIA supposed to do with that? I know they can do with that, with inconsistencies in all of the evidence as a whole. What do they do with that? That's usually the basis for an adverse credibility decision, when the things don't line up. That's why it's odd what the BIA did here. They did not do that here. So I guess the question is, what should they have done in this scenario? Yeah, so to be clear, with what Judge Wardlaw is saying, is the only thing that the BIA or the IJ can do with inconsistent evidence is have an adverse credibility finding, or can that same inconsistent evidence be the basis for saying, you just haven't met your burden because it's not persuasive because it's not consistent? Are they forced to go the adverse credibility route? Consistency relates to credibility. And if the board is going to state as a ground for denial, as the board did here, inconsistency, then there should be some analysis in the credibility determination by the immigration judge to find a fact. Now, here, the board considered a perceived inconsistency with the Certificate of Release and the mother's affidavit as a ground for the denial. This affidavit, or I should say the Certificate of Release, contained language that said that the evidence was insufficient to charge him for illegal gathering. But we submit that this language on the Certificate of Release does not doom Mr. Chen's claim. And to support this argument, I call your attention to the 2009 International Religious Freedom Report. That's at page 287. And I'm going to read these two sentences because it's noteworthy on this issue. It says, a growing number of unregistered religious groups have chosen to affiliate with a registered venue of the TSPM. That's a government-sanctioned Protestant religious organization in China. These groups are now able to meet legally with the supervision of the registered venue's leaders. So now, if we revisit the so-called troubling language of the Certificate of Release, the fact that the authorities had insufficient evidence becomes less problematic. So we're saying it's not an inconsistency. It's entirely possible that Mr. Chen's house church was in regulatory compliance with the local I think your point is that you think it's not inconsistent. Let's assume that it was inconsistent. I mean, you can tell the panel here is trying to figure out whether or not, if inconsistent evidence can only go to credibility, or if inconsistent evidence can also, you know, to the petitioner's credibility as a whole. And therefore, basically say the petitioner is not testifying honestly, right? That would be an adverse credibility finding. Or can you say, if you have inconsistent evidence, that evidence is not persuasive? And to me, in the Aiden case from this court, it says that we are to look at whether they've met their burden by looking at their credible testimony, along with the other evidence. But if the other evidence is not consistent, then it seems to me that that would actually hurt them in meeting their burden, right? So the question from this court is? Well, the question is, can inconsistent evidence only go to credibility, or can it also go to the persuasiveness of the evidence? Seems reasonable that it can go to credibility and persuasiveness. Is this court just saying all cases, or for this case? Yeah, not this, I understand that your position, I think, from your briefing is that there is not an inconsistency here. I get that. So I'm not asking you to concede that there's any inconsistency, because I don't think you think so. But I'm more wondering about the law, right? The legal issue. Right, and for the legal issues, we have to look at the IJ's decision, and what are the grounds for the denial? And that was one of the things that I just argued about, which we claim not to be an inconsistency. They also had a RMB to get them released, and Mr. Chen was required to weekly reporting. And so for the board, it didn't make sense that it conflicted with the language of the And we had both mothers saying she paid the bribe, and the document with his release and his having to report, it easily could be, they're not going to put on the certificate of release, we were bribed, and therefore we released him. That's precisely what I was going to argue, that there's plenty of evidence in the State Department Human Rights Report and the Mr. Chen's mother was victimized by police corruption. And it's it's clearly established that official corruption is endemic in China, based on the State Department reports. All right. Thank you, Mr. Garrett, you are over your time. So we will ask Mr. Hogan to please unmute myself now. Pardon me? I should mute myself now? Yes. Sorry, it's my first time doing this. No, it's okay. We're all getting used to this. Good morning, may it please the court, Brendan Hogan for the Department of Justice. First, it's worth pointing out that the petitioner in this case actually had ample evidence that the immigration judge wanted additional documentary, or excuse me, ample notice that the immigration judge wanted additional documentary evidence. At a September 8, 2010 hearing, this is at pages 100 to 105 of the record, where they specifically talked about the detention notice, the immigration judge encouraged the prior counsel to get a continuance saying, I don't think that what you're giving me right now is going to be sufficient to meet your burden. And they didn't submit any evidence after that. And then there was a four year gap until there was a merits hearing. So petitioner in this case had ample notice and four years to go and get additional evidence. And the reason the certificate of detention is so crucial in this case is, it's the only document regarding his experiences in China. He testified that he wasn't severely injured or seriously injured following the detention, so there's no medical records. He testified he had lost touch with all of the other congregants in China, so he had no letters from them. And so really, all he has is this certificate. And so that's why it's so crucial. Regarding to counsel's theory that it could be bribery, I would direct you to pages 159 to 162 and 165 to 166, where the immigration judge was prompting him to explain why, if they're releasing you for insufficient eminence, would they make you pay bail? And they were trying to figure out if it was maybe a fine or a bribe, and petitioner never said that. He said, no, I was made to pay while it wasn't an adverse credibility determination, given this is the only document of the only evidence, what was the board to do? Mr. Hogan, do you think that the BIA purported to assume credibility here? Well, it expressly said it was not going to affirm the immigration judge's adverse credibility findings. So yes, it would seem that they were presuming his testimony to be credible. The issue was... And then they proceeded as if it was a credibility issue. Well, the terms used were inartful, your honor. They should not have focused on the contradictory nature of the evidence. But the fact remains, it's not persuasive. I mean, he has a claim about one again, he has no evidence whatsoever regarding his experiences in China. And just to point out that he's claiming that this certificate proves that he was detained and that he had to pay bail and that he had to report repeatedly. But a month later, and this is on the record, his passport was issued by the government and he was allowed to leave China to pursue his studies in this country. So again, what should the board be doing with evidence of this simply not persuasive? So maybe the problem I'm having with it is that the BIA's analysis didn't follow the typical... I mean, maybe it's just inartfully written, I don't know. But it didn't follow the ordinary sequential analysis that you always see in these cases. And so what BIA should have done is square on address the credibility issue instead of sidestepping it and jumping into the corroboration. And I noticed that, I don't know, did you write this? Did you write the brief? It was my office, Your Honor, yes. I noticed at one point, you suggest that maybe we need to remand. And I'm wondering if that's because you think the BIA... you have a footnote that says, we don't agree with how the BIA approached this analysis. It didn't follow Wren, it didn't follow Batari. That we should remand. But what would we remand for if we were to do that? To the BIA to do it again? Well, to clarify, we were... I'm sorry, are you finished? No, it's all right. You know the issue I'm talking about. Well, to clarify, we were just pointing that out for... the board found two reasons that they did not corroborate in this case. One was the aforementioned certificate of detention. The second reason was his religious practice in Kentucky. And what we were just trying to point out to the court is that while substantial evidence does support the board's findings with regards to the certificate of detention, he was not given notice with regards to any evidence from Kentucky. So basically, what we were just trying to make the court aware of is that while we think that this decision is defensible and it is supported by substantial evidence, it should not affirm the board's findings with regards to his claims of practicing religion in Kentucky. Because there, they didn't give him the notice and opportunity. No, I believe it was at page 130 of the record where they just briefly asked him, you know, did you practice college at Bowling Green University? And he said, I went to church in Kentucky, but they didn't ask any follow-up questions. But again, even if the board's decision doesn't expressly mention Wren, the procedural steps were followed here. He was told at the September 2010 hearing that the evidence was insufficient and he should get more. He had four years and he still didn't. But the BIA didn't cite that or rely on that in any way in its decision. And it didn't adopt the IJ's decision. So we have to review the four corners of the BIA decision. We can't be looking at the IJ, which went off on a totally different round than any of them. Well, but the board did cite Aiden, Your Honor, which is a corroboration case. And in finding the petition, this is incredible. I believe it's at page 93 of the record, the IJ's decision, excuse me, where the IJ makes an added... Do you want to go to the water? You can take a minute. No, I apologize. I'm sorry. It's all right. The immigration judge makes the added determination that, by the way, your evidence is insufficient to rehabilitate your incredible testimony. And the immigration judge's decision does address the immigration judge's concerns with that evidence. And so what the board was doing... Counsel, I don't... When I read the BIA's decision here, I don't see the word missing. I don't see the word... I don't remember even seeing the word insufficient. It seemed to me like the BIA's basis for decision was, and I'll read it here, some of his corroborative evidence conflicts with his testimony, other corroborative evidence. It seems to me, isn't there a difference between missing evidence and saying you're supposed to provide some corroborative evidence and you didn't, versus saying you provided us with some evidence that could be corroborative, but it just wasn't. It was actually inconsistent. First of all, A, is that right? Is that true? It... The board should have been... The board should have taken more care to describe the issue it had with the evidence in this case. But it is accurate because the certificate of detention does not mention anything about bail or having to continually report in for several... You know, indefinitely, which calls into question that in 2014, at the time of the hearing, he claimed the police were still going to the house because he wasn't reporting in. And so the question I... The follow-up question. So I think your answer is that, yes, you can say that corroborative... You know, that their ground of their decision is that their corroborative evidence conflicts with his testimony. And that is different than saying you're missing corroborative evidence. That's the other ground. The other ground said you're missing corroborative evidence, and you've already agreed that that would need to be sent back. But on this other ground that says that the corroborative evidence simply conflicts, I think we need to review that for substantial evidence. And I think the challenge it seems like that this court is having is if you have conflicting evidence, is that always a credibility issue? What is it? I guess maybe you can tell us, what is the difference between a credibility issue to where you would use... You can use conflicting evidence to have an adverse credibility finding, right? I mean, we see that all the time. The IJs do that all the time. But can you also use conflicting evidence to just simply say it doesn't corroborate, you don't meet your burden of proof? Are those two things, or are they the same thing? Well, corroboration, Your Honor, goes whether it's sufficient and persuasive. And again, that is what the crux of the board's decision and what they were trying to drive at is that because we don't know what to believe, because you've got testimony saying one thing, but this one document and the only document regarding your alleged treatment in China says something else. And because they don't know what to believe, you haven't persuaded them, and therefore, he hasn't met his burden. And as to that document, I think what we've heard is this, I think we heard speculation today that that could, they could, you know, the document could be lying because they got a bribe. But I mean, we review for substantial evidence, right? So if there's possible different ways the evidence could be read, as long as the evidence is, you know, as long as the BIA's reading and the IJ's reading of that evidence is permissible, I think we defer to that. That's correct, Your Honor. The petitioner would have to show that it's so compelling that no reasonable fact finder could have ruled as the agency did in this case, which he has not done. And does the panel have any additional questions? No, I don't. Judge Hillman? No, thank you, Judge. Okay, Mr. Bader, I'll give you a minute to rebut. You're still muted, Mr. Bader. There I am. I'm there right now. Okay. There was some significant discussion about the term bail and how it conflicts with the certificate of release. We submit that, and I see this all the time as a practitioner, that or respondents or petitioners similarly situated at Mr. Chen or Mr. Petitioner's mother, they're not sophisticated with legal terms. Everyone here knows what a bail is, but to them, they don't know the meaning of the bail. And their meaning of it will become even foggier when they, in the context of a corrupt legal apparatus. So it does conflict when they say bail, but it looks like it's a shakedown, but... So counsel, to my earlier question, and I asked your opposing counsel, I mean, you're providing us, I mean, it's black letter law, I think, in immigration that counsel's argument can't substitute for evidence, right? And so you're saying, well, in my experience as an experienced immigration lawyer, I've seen this and they don't really know what they're talking about, etc., but none of that can substitute for the evidence that's in the record, right? We can't take your word and treat it as evidence. So I guess the question is, if, you know, you're saying that this could be, they could be lying, that this could have been a bribe or something like that, and maybe they didn't know what bail meant, but even assuming that that's one possible legitimate reading of that, if the IJs and the BIAs reading of that is different, but also a possible reading, don't we have to defer to that? I'm not conceding that this panel should defer that that we should expect an IJ adverse credibility determination and a board decision to be based on substantial evidence that's probative and substantial. And in this case, the board has to do better and the IJs IJ adverse credibility determination needs to be specific and cogent. And that's not what's happening in this case. I can go through all 11 issues with the IJs determination, but I'm sure we don't have that time. We don't. Thank you, counsel. There's one more thing. Okay. It should be noted that the petitioner's asylum statement was never entered into the record. And that was part of the basis of the IJs finding is that she found inconsistencies with the statement and some of the testimony, but it'd be substantially unfair if the same was never entered in the record. It wouldn't be based. Her finding would not be based on which statement. I'm sorry, counsel, which statement are you saying was the original statement? And she uses the word original statements in her findings. It was that statement is nowhere in the record or is it correct? It went from NTA exhibit one to exhibit two to supporting documents. The 589 and the asylum statement was never entered. And so what's the inference from that fact? Oh, that inference is that greatly to a great degree defeats the IJs credibility determination because she bases... Okay. So if you're saying that that undercuts the IJs adverse credibility determination, the BIA didn't rely on the adverse credibility determination. It seems to me that the adverse credibility determination is like a broad saying, you know, I've looked at everything and you're just not... We are way over time on this and I just want to thank both counsel for a very good argument and Chen versus Barr will be submitted and we will take up the next case, which is Elizondo Hernandez versus Barr. Thank you very much counsel.
judges: Wardlaw, Hillman, Vandyke